217 B.R. 104 (1998)
In re Frederick N. AKAMINE, Debtor.
BRENNAN, FABRIANI & NOVENSTERN, Plaintiff-Appellant,
v.
Frederick N. AKAMINE, Defendant-Appellee.
No. 96 B 22513, 97 Civ. 6684(WCC).
United States District Court, S.D. New York.
January 9, 1998.
*105 Valdespino & Copland, for Plaintiff-Appellant, Tarrytown, NY, Andres J. Valdespino, of counsel.
Law Offices of Jeffrey L. Sapir, for Defendant-Appellee, White Plains, NY, Jeffrey L. Sapir, of counsel.

OPINION AND ORDER
CONNER, Senior District Judge.
This bankruptcy appeal presents the issue of whether a debtor's own attorney's fees, incurred in connection with child custody litigation, are exempt from discharge under 11 U.S.C. § 523(a)(5).

BACKGROUND
Plaintiff-Appellant Brennan, Fabriani & Novenstern ("BF & N") is a law firm that represented Debtor-Defendant-Appellee Frederick Akamine in matrimonial proceedings. A primary focus of that proceeding was the custody and support of Akamine's two children. On May 12, 1995, Akamine and his then-wife entered into a Separation Agreement calling for, inter alia, joint custody *106 of their children. At the time of the Agreement, a divorce action was pending in New York State Supreme Court. Ultimately, the Agreement was incorporated into a Judgment of Divorce entered by the Clerk of the Court, Westchester County in August 1995.[1] The divorce judgment ordered that the parties "comply with every legally enforceable term and provision of [the Settlement Agreement] . . . as if such term or provision were set forth herein in its entirety." Of importance to the instant action is the provision in Article XX, ¶ 21.1 of the Settlement Agreement that "[e]ach party shall pay his or her own attorney's fees for services rendered in connection with the negotiation and execution of this Agreement."
Subsequently, Akamine filed for bankruptcy. BF & N then brought an adversary proceeding in the Bankruptcy Court for the Southern District of New York, seeking to collect the $17,000 in unpaid fees owed by Akamine for services rendered between October 22, 1993 and November 1, 1995 in connection with the Separation Agreement and divorce proceedings. BF & N sought to have its fees declared nondischargeable pursuant to § 523(a)(5) of the Bankruptcy Code. Section 523(a)(5) provides an exemption from discharge for "any debt":
. . . to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . .
11 U.S.C. § 523(a)(5) (1993 & Supp.1997). Akamine moved for summary judgment and BF & N cross-moved for the same.
On May 6, 1997, Bankruptcy Judge Adlai S. Hardin, Jr. ruled from the bench on the motions:
My ruling is this. . . . There is no question, obviously, that the creditor here is not the spouse, former spouse, or child of the debtor. The creditor acknowledges that there is no case presently on the books, at least not in this circuit, holding that [a] law firm representing the debtor in a prior matrimonial litigation can be awarded a judgment of nondischargeability under Section 523(a)(5). Rather, the claim here is predicated upon the same theory as [in] those cases which have held that in certain circumstances a claim for payment by a law firm for the other spouse may be held to be in the nature of support or maintenance for the other spouse, and therefore as a claim against the debtor may be nondischargeable under Section 523(a)(5).
Recognizing that legal fees may be incurred by either party in litigating matters of custody, and assuming for purposes of argument that all of the greater part of the legal fees here sought to be held nondischargeable may have been expended in connection with issues relating to custody, nevertheless I conclude that Section 523(a)(5) should not be construed as broadly as the creditor in this case seeks. The concept of alimony, maintenance and support is by its very nature the imposition of the costs incurred by one spouse upon another. The requirement that one spouse pay the costs or provide funding for the other spouse on the theory that that shifting of cost or obligation is appropriate as alimony, maintenance or support, that concept is not involved where one spouse incurs his or her own expenses in pursuit of matrimonial litigation.
If the scope of the exception to discharge in Section 523(a)(5) is to be expanded, I believe that that change in the law should be done by a superior court. In any event, it is my view that legal costs incurred by a spouse in connection with a matrimonial litigation, including the costs incurred in litigating issues relating to custody, cannot fairly be brought within the exception to discharge for alimony, maintenance and support provided in Section 523(a)(5). That is my ruling.
(Tr. of Proceedings, dated June 26, 1997.) On May 22, 1997, an order was entered granting Akamine's summary judgment motion and denying BF & N's cross-motion for summary judgment.
*107 This appeal, over which we have jurisdiction pursuant to 28 U.S.C. § 158, followed. For the reasons discussed below, we affirm.

DISCUSSION
As stated above, § 523(a)(5) of the Bankruptcy Act exempts from discharge "any debt . . . to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . ." 11 U.S.C. § 523(a)(5). BF & N argues that under this section the legal fees owed to it by Akamine are nondischargeable as a debt for support to Akamine's child. Accordingly, we must consider whether the fees constitute a "debt" (1) "to a . . . child of the debtor"; (2) incurred for the "support" of the child; (3) "in connection with a separation agreement, divorce decree or other order of a court of record."
In making this determination, we are bound by certain rules of the road. First, on appeal, a bankruptcy court's conclusions of law are reviewed de novo. Fed. R. Bankr.8013; In re Colonial Realty Co., 980 F.2d 125, 130 (2d Cir.1992); Peters v. Hennenhoeffer (In re Peters), 133 B.R. 291, 294 (S.D.N.Y.1991), aff'd, 964 F.2d 166 (1992) (per curiam). Second, § 523(a)(5) reflects Congress's determination that the policy interest in providing for a debtor's offspring and former spouse takes precedence over the Bankruptcy Code's general purpose of providing the debtor with a fresh start. Forsdick v. Turgeon, 812 F.2d 801, 802 (2d Cir. 1987). Accordingly, despite the normally narrow construction given to statutory exemptions from discharge, § 523(a)(5) exemptions from discharge for child and spousal support receive a more liberal construction. See Miller v. Gentry (In re Miller), 55 F.3d 1487, 1489-90 (10th Cir.1995); 4 Collier on Bankruptcy ¶ 523.05 (15th ed. rev.1997). Finally, although the characterization of a debt as "support" or otherwise is a matter of federal bankruptcy law, state law concepts may carry persuasive weight in light of the absence of a federal law of domestic relations. Forsdick, 812 F.2d at 802-03 (citing Pauley v. Spong (In re Spong), 661 F.2d 6, 8-9 (2d Cir.1981)).
We turn now to consider whether the legal fees owed to BF & N by Akamine constitute a debt "to . . . [his] child[ren]" for "support" incurred "in connection with a separation agreement, divorce decree or other order of a court of record."
A. Debt "to a . . . child of the debtor"
It is well-settled that as long as a debt[2] is deemed to be "support," it need not be payable directly to a child or spouse in order to be nondischargeable. In re Spong, 661 F.2d at 9-11 (debtor's obligation to pay former spouse's legal bill in connection with divorce proceedings constituted debt "to a . . . former spouse"); see also Holliday v. Kline (In re Kline), 65 F.3d 749, 751 (8th Cir.1995) (same); In re Miller, 55 F.3d at 1489-90 (debtor's obligation to pay fees owed to guardian ad litem and psychologist in connection with custody/divorce proceedings constituted debt "to a . . . child of the debtor"); In re Peters, 133 B.R. at 295-96 (debtor's obligation to pay fees owed to guardian ad litem in connection with custody proceedings constituted debt "to a . . . child of the debtor"), aff'd, 964 F.2d 166. To hold otherwise would be "exalting form over substance." In re Spong, 661 F.2d at 11. Accordingly, the fact that Akamine's debt, incurred on behalf of his children in connection with custody litigation, is payable directly to BF & N rather than to his children does not preclude a *108 finding of nondischargeability under § 523(a)(5).
B. "For . . . support"
The term "support" in § 523(a)(5) is broadly construed. As one Southern District court has observed, federal courts have broadened the meaning of "support" to include virtually any service performed in connection with a child support or custody litigation that inures to the benefit of the child. In re Peters, 133 B.R. at 295, aff'd, 964 F.2d 166. That court gave the following explanation of the reasoning behind this view:
. . . The support of a child does not just rest upon daily sustenance. The protection of the child's interests in court . . . constitutes a measure of support for the child whose value to the child cannot be diminished. Indeed, it is in the child's best interests to have custody matters fully and fairly litigated. Insuring this is done is part of the parents' duty to support the child.
Id. at 296; cf. In re Spong, 661 F.2d at 9 ("An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law."). For substantially this reason, the vast majority of courts have held that awards of fees inextricably intertwined with proceedings affecting the welfare of a child, such as custody or child support litigation, are deemed "support" within the meaning of § 523(a)(5). See, e.g., Jones v. Jones (In re Jones), 9 F.3d 878 (10th Cir.1993); Dvorak v. Carlson (In re Dvorak), 986 F.2d 940 (5th Cir.1993); Shannon v. Strickland, 207 B.R. 752 (M.D.Fla.1995), aff'd, 90 F.3d 444 (11th Cir.1996); Wedgle & Shpall, P.C. v. Ray (In re Ray), 143 B.R. 937 (D.Colo.1992); Dellapa v. Vazquez (In re Vazquez), 92 B.R. 533 (S.D.Fla.1988); Madden v. Staggs (In re Staggs), 203 B.R. 712 (Bankr.W.D.Mo.1996); Spear v. Constantine (In re Spear), 183 B.R. 335 (Bankr.D.Mass.1995); Swartzberg v. Lockwood (In re Lockwood), 148 B.R. 45 (Bankr.E.D.Wisc.1992); Holtz v. Poe (In re Poe), 118 B.R. 809 (Bankr.N.D.Okl.1990); Hill v. Snider (In re Snider), 62 B.R. 382 (Bankr.S.D.Tex.1986); Ostrow v. Schwartz (In re Schwartz), 53 B.R. 407 (Bankr. S.D.N.Y.1985); Hack v. Laney (In re Laney), 53 B.R. 231 (Bankr.N.D.Tex.1985).
New York domestic relations law supports the conclusion that attorney's fees incurred in connection with child support and custody matters, at least where awarded to the debtor's former spouse, constitute "support" under § 523(a)(5). Under New York common law, parents are obligated to provide their children with the "necessaries" of life. In re Aurora, 414 N.Y.S.2d 632, 637, 98 Misc.2d 695, 701 (N.Y.Fam.Ct.1979); In re Belt, 324 N.Y.S.2d 623, 627-28, 67 Misc.2d 679, 681-82 (N.Y.Fam. Ct.1971); cf. Hirsch v. Hirsch, 37 N.Y.2d 312, 372 N.Y.S.2d 71, 74, 333 N.E.2d 371, 373 (Ct.App.1975) (under § 413 of the New York Family Court Act, "parents are chargeable with the support of their children"). Necessaries are not limited to such items as food, clothing, and shelter, but under certain circumstances also include "the right of counsel." Kern v. Kern (In re Kern), 319 N.Y.S.2d 178, 191, 65 Misc.2d 765, 777 (N.Y.Fam.Ct.1970); see Essner v. Homyak (In re Homyak), 40 B.R. 99, 103 (Bankr.S.D.N.Y.1984) (citing Dravecko v. Richard, 267 N.Y. 180, 196 N.E. 17 (Ct.App. 1935)). In addition, as a statutory matter, any New York court "considering questions of child custody must make every effort to determine `what is for the best interest of the child, and what will best promote its welfare and happiness."' Eschbach v. Eschbach, 56 N.Y.2d 167, 451 N.Y.S.2d 658, 660, 436 N.E.2d 1260, 1262 (Ct.App.1982) (quoting N.Y. Dom. Rel. Law § 70); see also N.Y. Dom. Rel. Law § 240 (McKinney Supp.1997-98). New York law, then, is consistent with the notion that legal fees incurred in child custody and support litigation ultimately inure to the child's benefit and reasonably could be deemed "support" for purposes of § 523(a)(5).
In light of both federal and state law, we would have no problem agreeing with those courts that have found that an award to a debtor's former spouse of attorney's fees incurred in a custody litigation is "support" within the meaning of § 523(a)(5). This case, however, presents the more novel question of whether the legal fees incurred by a debtor in an effort to gain custody of his child  that *109 is, the debtor's own legal bill  constitute "support."
The broad statement of the court in In re Peters that a parent's duty of support includes an obligation to protect the child's interests in custody matters, see 133 B.R. at 296, might support the conclusion that the identity of the party incurring the legal fees is irrelevant. Although the Second Circuit Court of Appeals affirmed the judgment of the district court in In re Peters, the extent to which the Court of Appeals agreed with, or even considered, the full implications of such a broad pronouncement are unclear.[3]
In any event, we need not decide this issue; whether or not a debtor's own custody-related legal fees may constitute "support," we find that the fees at issue here were not incurred "in connection with a separation agreement, divorce decree or other order of a court of record" for purposes of § 523(a)(5).
C. "In connection with"
As noted above, Article XX, ¶ 21.1 of the Separation Agreement provides that "[e]ach party shall pay his or her own attorney's fees for services in connection with the negotiation and execution of this Agreement." The Judgment of Divorce ordered that the Settlement Agreement "shall survive and shall not be merged in this Judgment, and the parties are hereby directed to comply with every legally enforceable term and provision of [the Settlement Agreement] . . . as if such term or provision were set forth herein in its entirety." BF & N's position would require a finding that either the memorialization in the Settlement Agreement of the parties' pre-existing contractual obligation to pay their own attorney's fees, or the New York State Supreme Court's incorporation of that provision into its divorce judgment, or both, somehow places an otherwise dischargeable contractual obligation within the § 523(a)(5) exemption. For the reasons explained below, we do not view Akamine's obligation to pay his own attorney's fees as having been incurred "in connection with" the Separation Agreement or the state court's judgment and order.
To begin with, neither the Separation Agreement nor the Judgment of Divorce imposed upon Akamine any debt for legal fees that he had not already incurred. The Separation Agreement's attorney's fees provision served merely as a commitment that neither party would seek a fee award. As incorporated into the Judgment of Divorce, the provision functions similarly as a confirmation that the court, rather than awarding attorney's fees to either divorcee, approved the parties' agreement to bear their own legal costs. In contrast to those § 523(a)(5) cases in which a separation agreement, divorce decree, or other court order shifted onto the debtor the burden of his or her former spouse's attorney's fees, this case presents nothing beyond the mere acknowledgment in a separation agreement and divorce judgment of a previously incurred contractual obligation. This debt, predating the Separation Agreement and Judgment of Divorce, was not incurred "in connection with" either document for purposes of § 523(a)(5).
Were we to rule otherwise, attorneys could unilaterally render their own fees nondischargeable simply by adding a sentence to their client's separation agreement stating that the parties shall bear their own legal costs. This would allow them to ensure the collectibility of contractual debts for their services, while pediatricians, for example, would remain powerless to alter the dischargeable nature of debts for their services. There is no justification for thus favoring lawyers over other professionals whose services have even more clearly benefitted the children of the bankrupt.
Finally, we note that the fees that BF & N seeks to be declared nondischargeable are for services rendered between October 22, 1993 and November 1, 1995. This time period covers not only the preparation and execution *110 of the Settlement Agreement, but also the divorce litigation. The Separation Agreement, as incorporated by the Judgment of Divorce, provides that "[e]ach party shall pay his or her own attorney's fees for services in connection with the negotiation and execution of this Agreement." (Emphasis added.) If BF & N is seeking to recover fees for services rendered in connection with the divorce proceeding that are distinct from those rendered in connection with the negotiation and execution of the Separation Agreement, then arguably the Separation Agreement  either standing alone or as incorporated into the Judgment of Divorce  has no bearing on such fees. If so, those attorney's fees not covered by the Separation Agreement would clearly not be "in connection with" a separation agreement, divorce decree, or other court order. Regardless, we find that all legal fees at issue in this action, including those fees expressly covered by the Separation Agreement, were not incurred "in connection with a separation agreement, divorce decree or other order of a court of record" as required by § 523(a)(5) and are therefore dischargeable.
D. Legal Precedents
Only three courts have addressed the dischargeability under § 523(a)(5) of a debtor's own attorney's fees incurred in connection with matrimonial litigation. All three have found such fees to be dischargeable and, to the extent they are applicable here, support the conclusion we have reached.

1. In re Lindberg

In Frey, Lach & Michaels, P.C. v. Lindberg (In re Lindberg), 92 B.R. 481 (Bankr. D.Colo.1988), the law firm retained by the debtor to represent him in a child support/custody litigation sought a determination that their fees were nondischargeable. The bankruptcy court was troubled by the fact that "the attorney's fees obligation owed here is an obligation of the Debtor to his own attorney, not an obligation of the Debtor to his former wife or her attorneys." Id. at 482-83. The court concluded a cursory statutory analysis by observing that "[n]owhere in Section 523 are attorney's fees per se nondischargeable nor does the Code direct that the Court look to the nature of the debtor's own attorney's fees to determine their nondischargeability." Id. at 483. Given that courts broadly construe the language of § 523(a)(5) and give due consideration to its underlying policy concerns, we are not persuaded by the conclusory argument that a debtor's own attorney's fees can never be deemed nondischargeable simply because the statute does not specifically address the issue.
But the Lindberg court's primary concern was the potential ramifications of finding for the creditor:
Counsel [for the creditor] is asking this Court to look behind the attorneys' fees to their nature and determine them nondischargeable since they were incurred in a child support and custody dispute. To accept Counsel's argument would mean that any attorney's fees resulting from a case involving child support, maintenance, or alimony would be nondischargeable. Using that strained reasoning, any and all attorney's fees incurred in certain types of litigation would be nondischargeable. That would, for example, apply (1) in cases where there is fraud or defalcation while acting in a fiduciary capacity, or (2) in a personal injury case where willful and malicious injury occurred, or (3) in cases where damages result in an accident involving a legally intoxicated person, pursuant to Sections 523(a)(4), (a)(6) and (a)(9), respectively. This is absurd.
Id. In our view, this slippery-slope argument goes too far. To begin with, neither the statutory language of § 523(a)(5) (i.e., "support") nor the policy concerns that have informed interpretation of that language readily apply to other § 523(a) discharge exemptions. Further, even within § 523(a)(5), all cases are not necessarily on the same footing. For example, a finding that attorney's fees incurred by a debtor in seeking custody of his child are nondischargeable would not necessarily compel a finding that legal fees incurred by a debtor in seeking alimony from his former wife are similarly nondischargeable. Notwithstanding the Second Circuit Court of Appeals' statement that "[a]n award of attorney's fees may be essential *111 to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law," In re Spong, 661 F.2d at 9, the distinction between custody and alimony cases may be significant. The fact that custody litigation revolves around the best interests of a person other than the litigants (i.e., the child), see Eschbach, 451 N.Y.S.2d at 660, 436 N.E.2d at 1262 (discussing N.Y. Dom. Rel. Law § 70), may support treating attorney's fees the same under § 523(a)(5) regardless of which party incurred them.[4]Cf. In re Lockwood, 148 B.R. at 48 (discussing why "`[s]upport' for a former spouse is not synonymous with `support' for children, and it is appropriate in the bankruptcy context to recognize that difference"). In the context of alimony litigation, there may be no parallel rationale for treating the two fee situations similarly. Of course, the issue of whether custody cases are qualitatively different from alimony cases under § 523(a)(5) with respect to attorney's fees is not before us. We raise the issue merely to explain why we are not persuaded by the Lindberg court's reasoning.
Its reasoning aside, the judgment of the Lindberg court squares with our own. The Lindberg court simply assumed, in the absence of a fee award, that the parties were responsible for their own legal fees. Such debts were contractual obligations independent of the state court's grant of custody to the debtor. In fact, unlike the instant case, the state court in Lindberg did not even acknowledge what arrangement, if any, the parties had made with respect to their legal costs. Thus, although the Lindberg court did not address the issue, the legal fees at issue in that case clearly were not incurred "in connection with" a separation agreement, divorce decree, or other court order.

2. In re Rios

In In re Rios, 901 F.2d 71 (7th Cir.1990) (per curiam), an attorney sued the debtor to recover fees for obtaining an order of filiation and seeking an order of support. Like the Lindberg court, the Seventh Circuit Court of Appeals noted that, with the exception of In re Lindberg, "[i]n every reported case concerning the nondischargeability of attorneys' fees . . ., the fees were to be paid by the party from whom the support was being sought" pursuant to a court order. Id. at 72. The court then observed that the creditor "seeks to break this pattern: she represented the debtor, who was the party seeking support, and she has no court order." Id.
In deciding that the legal fees were not in the nature of "support," the court "agree[d] with the Lindberg court's reasoning." Id. The Rios court explained:
. . . The [creditor's] theory is that the spouse's or child's expenses of collection are part of the underlying obligation. That theory cannot stretch to cover fees for an attorney hired by the debtor, unless there is some legal obligation to hire an attorney on behalf of the spouse or child. [Creditor] has admitted that [debtor] had no legal obligation to pursue a support order at all. . . . [Debtor] was merely seeking financial relief in meeting her own support burden. [Debtor's] contract with [creditor] did not generate a debt to [debtor's] child. It follows that [debtor's] obligation to [creditor] was not in the nature of child support.
Further, [creditor] cannot point to any court order as § 523(a)(5) requires. Indeed, [creditor] has conceded that [debtor] was not required by New York law to pursue child support. In the absence of a specific court order, expenses incurred to obtain support from an absent parent are not legally distinguishable from other expenses which redound to the benefit of a child. Because [debtor] could have refrained from suing [her child's father], it is plain that in seeking support she was only trying to lighten her own burden. As a legal matter, an ordinary lawyer's bill is no better than a grocer's bill. Indeed, a grocer's argument would be stronger than an attorney's because a parent must necessarily incur grocery expenses to meet his or her obligation to support the child, whereas there is no necessity of suing an absent *112 parent for support. But the grocer's bill is clearly dischargeable in bankruptcy.
Id. at 72-73 (internal footnote omitted).
Although compelling in the context of the case before it, the reasoning of the Rios court applies with less force to the instant case. First, the Seventh Circuit Court of Appeals was not bound by Second Circuit jurisprudence, as we are. We are not persuaded that the Rios court's formalistic emphasis on whether "there is some legal obligation to hire an attorney on behalf of the . . . child" should control here. Unlike the debtor in Rios, Akamine decidedly was not "merely seeking . . . relief" from his own "burden." Although Akamine did not have an affirmative obligation to hire an attorney in the custody and child support litigation,[5] the Second Circuit case law expresses a desire to see child custody matters fully and fairly litigated for the sake of the child's best interests. See In re Peters, 133 B.R. at 296, aff'd, 964 F.2d 166; see also In re Spong, 661 F.2d at 9 (divorce proceedings). In this context, the Seventh Circuit's strict test may not be consistent with this Circuit's jurisprudence.
Nevertheless, of great significance to the Rios court was the absence of a court order mandating the payment of attorney's fees as part of the child support judgment, as § 523(a)(5) requires. It was the absence of such an order that caused the court to express slippery slope concerns similar to (although less sweeping than) those of the Lindberg court  i.e., concern that without a specific court order, legal fees incurred by a debtor in connection with child support litigation "are not legally distinguishable from other expenses which redound to the benefit of a child."
As a general matter, we agree with the Rios court that in the absence of a court order, "an ordinary lawyer's bill is no better than a grocer's bill." The Separation Agreement and Judgment of Divorce in the instant action do not transform BF & N's legal fees into anything other than an "ordinary lawyer's bill."

3. In re Klein

The third and final case to have addressed the issue at hand was Gulielmetti & Gesmer, P.C. v. Klein (In re Klein), 197 B.R. 760 (Bankr.E.D.N.Y.1996), in which a law firm sought to exempt from discharge attorney's fees incurred by the debtor in connection with a divorce, custody, and child support action. The court observed that "here the attorney's fees owed is based upon a contractual obligation of the Debtor to her own attorneys, rather than an obligation of the debtor to her former husband or his attorneys." Id. at 762. The court also noted that both In re Rios and In re Lindberg had found such obligations to be dischargeable, but it performed no analysis of those cases. Id.
In determining that the creditor's fees were dischargeable, the court emphasized that the creditor "cannot point to a court order mandating payment of its fees as part of alimony or child support." Id. "To accept [the creditor's] argument," the court continued, "would have the effect of finding that any and all expenses which accrue to the benefit of a child, such as food, clothing and medical expenses, would be nondischargeable under section 523(a)(5)." Id. It could be contended that this slippery slope analysis applies with less force where, as here, a separation agreement and divorce judgment arguably place a legal imprimatur on an agreement to bear one's own legal fees. But as explained above, we find that neither the Separation Agreement nor the Judgment of Divorce render Akamine's obligation to BF & N distinguishable from an obligation to cover, for example, a doctor's or grocer's bill.

CONCLUSION
For the reasons discussed above, we find that Akamine's debt to BF & N for services *113 rendered during child support and custody litigation was not a debt incurred "in connection with a separation agreement, divorce decree or other order of a court of record" as required by § 523(a)(5) of the Bankruptcy Code. Accordingly, the bankruptcy court properly held this debt to be dischargeable. The decision of the bankruptcy court is therefore affirmed.
SO ORDERED.
NOTES
[1] The Separation Agreement and the Judgment of Divorce were added to the record at the request of this Court. Both have been filed under seal.
[2] In 1994, Congress amended the definition of "debt" in 11 U.S.C. § 101(12) by adding § 101(12A), which defines "debt for child support" to mean "a debt of a kind specified in section 523(a)(5) of this title for maintenance or support of a child of the debtor." The reason for this addition is unclear, considering that the term "debt for child support" does not appear anywhere in the Bankruptcy Code.

That uncertainty aside, the Code defines "debt" to mean "liability on a claim." § 101(12). A "claim" is defined in part as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." § 101(5)(A).
[3] In a one-paragraph per curiam opinion, the Court of Appeals stated: "Substantially for the reasons set forth in Judge Goettel's opinion, . . . including his reliance on In re Spong, 661 F.2d 6, 9 (2d Cir.1981) (`An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law. . . . [D]ischargeability must be determined by the substance of the liability rather than its form.'), we affirm." 964 F.2d at 167.
[4] We emphasize, however, that we do not decide this issue  that is, whether a debtor's own attorney's fees incurred in connection with custody litigation constitute "support" within the meaning of § 523(a)(5). See supra at 109 (section B).
[5] In custody proceedings requiring the appointment of a guardian ad litem, the Rios requirement may be satisfied. See N.Y. Surr. Ct. Proc. Act § 403-a (in certain situations, "[t]he court shall appoint a guardian ad litem to represent an infant in a proceeding for the commitment of the guardianship and custody of such infant"); In re Lockwood, 148 B.R. at 49 (Rios requirement met where Wisconsin guardian ad litem statute "require[d] that an attorney be hired to represent the [debtor's] children").